UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN ASSOCIATION OF COLLEGIATE REGISTRARS AND ADMISSIONS OFFICERS, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN UNIVERSITIES ADMISSION PROGRAM, INC., *et al.,* <br><br> Defendants. | Civil Action No. 06-0137 <br> (ESH)(AK) |

## MEMORANDUM ORDER

Pending before the Court are Plaintiff's Motion for Civil Contempt and Compensatory Relief ("Motion") [18], Defendants' opposition thereto ("Opposition") [19][1], and Plaintiff's reply ("Reply") [21].[2]  Upon consideration of the pleadings, the arguments made at the October 2, 2006 hearing, and the entire record, for the reasons set forth below, Plaintiff's Motion is DEFERRED.

---

[1]In opposition to Plaintiff's Motion and the trial court's July 25, 2006 show cause order, Defendant Prade filed a motion titled "Defender [sic] Dr. Jean Noel Prade, President of AUAP . . . . Motion to Dismiss the Motion for Civil Contempt and Compensatory Filed By AACRAO . . . and Motion for Compensatory Relief."  The Court will refer to this motion by Defendant Prade and the supporting memorandum as "Opposition."

[2]The trial court referred Plaintiff's Motion to this Court on August 11, 2006.

### I. Factual Background

Defendant American Universities Admission Program, Inc. ("AUAP") is a Florida corporation wholly owned and operated by Defendant Jean-Noel Prade ("Prade"). (*See* Pl.'s Mot. Ex. 12. (Settlement Agreement) at 1; Opp'n at 9.) AUAP, primarily through its Web site, offers at least two services to its customers. The "Credential Evaluation Service," primarily at issue here, offers evaluations of foreign academic and "experiential" credentials. (*See* Opp'n Ex. 4.) According to Prade, these evaluations are usually issued directly to AUAP customers (*see* Opp'n at 6), who then use them in applying for admission to academic institutions or in obtaining H1B work visas in the United States (*see* Opp'n Ex. 4). The second AUAP service, the "Selection + Guaranteed Admission Program," offers consulting assistance to customers applying to American Academic Institutions. (*See* Opp'n at 7.)

Plaintiff American Association of Collegiate Registrars and Admissions Officers ("AACRAO" or "Plaintiff") is a non-profit trade organization for higher education admissions and registration professionals located in the District of Columbia. As part of its services, AACRAO provides evaluation of foreign academic credentials to universities in the United States.

On January 25, 2006, Plaintiff filed suit against Defendants alleging several violations of the Lanham Act and also unfair competition under the common law. (*See* First Am. Compl. [9].) Plaintiff alleged, in part, that Defendants unlawfully used the "AACRAO" mark on the AUAP Web site and on AUAP evaluations of customers' foreign academic credentials. (*See id.*)

On April 18, 2006, pursuant to a motion by Plaintiff, the trial court approved and issued a Final Consent Judgment and Injunction ("Injunction") [17], signed by all parties. In this

document, Defendants stipulated to the alleged Lanham Act and common law violations.[3]  Also, the Injunction required Defendants, in pertinent part, to (1) provide Plaintiff with a "list of all AUAP customers and clients for whom Defendants have prepared reports, including evaluations, containing any AACRAO mark or any reference to affiliation between AUAP and AACRAO[;]" (2) provide Plaintiff with a list of "the names of any and all third party recipients of such documents[;]" and (3) remove all AACRAO marks from Web pages under the control of Defendants.  (*See* Injunction ¶¶ 10, 12.)

In response to the Injunction, Defendants provided, without any further identifying information, a list of names of AUAP customers.  They also provided a list of names of institutions that "may [have] received a document of AUAP with the mention of AACRAO membership."  (*See* Pl.'s Mot. Ex 15.)  The list of names of institutions did not include any institutions in the United States.  Finally, Defendants removed most, but not all, of the AACRAO logos and marks from the AUAP Web site.

In correspondence following the entry of the Injunction, the parties came to disagree over whether Defendants' efforts to comply with the Injunction had been sufficient.  (*See* Pl.'s Mot Exs. 6-8.)  Unable to reach a resolution with Defendants, Plaintiff filed the instant Motion on July 17, 2006.  Therein Plaintiff alleged that Defendants have violated the Injunction in three ways: (1) by failing to provide post or e-mail addresses corresponding to the customer names they submitted; (2) by failing to provide names of all institutions that received their infringing

---

[3]Specifically, Defendants admitted to trademark infringement in violation of 15 U.S.C. § 1114(1), unfair competition and false designation of origin in violation of § 1125(a)(1)(A), false advertising in violation of § 1125(a)(1)(B), and unfair competition under the common law of the District of Columbia.  *See* Injunction ¶¶ 3-6.

reports, particularly academic institutions in the United States; and (3) by failing to properly inspect and modify their Web pages to remove all marks owned by AACRAO. (Pl.'s Mot. at 1.)

After reviewing Plaintiff's Motion, the trial court ordered Defendants "to show cause why they should not be held in contempt for violating the Final Consent Judgment and Injunction." (July 25, 2006 Minute Order.)

This Court held a hearing on this matter on October 2, 2006. At the hearing, Plaintiff reiterated its grounds for contempt and requested the following sanctions against Defendants: (1) access to Defendants' computer and paper records; (2) the name of Defendants' internet service provider; and (3) attorneys' fees. Near the close of the hearing, Defendant Prade, appearing without counsel for himself or AUAP, agreed to allow Plaintiff to take an image of his computer hard drive. (*See* Hr'g Tr. at 3:56.)

## II.  DISCUSSION

A.  **Contempt Jurisdiction of Magistrate Judges**

The Federal Courts Improvement Act of 2000 gave magistrate judges authority to exercise the civil contempt power in cases where the parties have consented to proceed before the magistrate judge. *See* 28 U.S.C. §§ 636(e) and 636(c). However, Congress withheld direct civil contempt power from magistrate judges when parties proceed before them by referral from the district court. In the latter situation, magistrate judges must certify the facts constituting civil contempt to the district court, *see* 28 U.S.C. § 636(e)(6), or issue a report and recommendation on the matter, *F.D.I.C. v. LeGrand*, 43 F.3d 163, 165 n.3 (5th Cir. 1995); *see also, e.g., AT&T Corp. v. Petersen*, 2001 WL 45780 (Jan. 10, 2001) (Kay, M.J.) (recommending that the trial

court find Defendant in civil contempt of consent decree). Magistrate judges may exercise discretion in deciding whether to certify or recommend contempt to the district court. *See Athridge, et al. v. Aetna Casualty and Surety Co.*, 184 F.R.D. 181, 198 (D.D.C. 1998) (citing *Stotts v. Quinlan*, 139 F.R.D. 321, 324 (E.D.N.C. 1991).

**B.     Default by AUAP**

In its Reply, Plaintiff argues that Defendant AUAP should be held in default of Plaintiff's Motion for failure to respond through counsel. It is a longstanding rule that a corporation may not appear in federal court without representation by counsel. *Rowland v. Calif. Men's Colony, Unit II Men's Advisory*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."). A corporation's professed inability to pay for counsel does not serve as an exception to this rule. *See Flynn v. Thibodeaux Masonry, Inc.*, 311 F.Supp.2d 30, 37 (D.D.C. 2004). Failure to secure counsel will subject a defendant corporation to a default judgment against it. *See id; see also Z-International, Inc. v. Z Line International, Inc., et al.*, 2005 WL 1580609, at *2-3 (finding a defendant corporation in default of plaintiff's civil contempt motions because of its failure to secure counsel).

In the instant case, Defendant Prade initially sought permission of the trial court to proceed *pro se* on behalf of Defendant AUAP. (*See* Letter from AUAP, Inc., filed Mar. 17, 2006 [12].) The trial court denied his request, citing the aforementioned rule against corporations proceeding *pro se*. (*See* Mar. 22, 2006 Order [13].) During the settlement period, Defendants obtained representation by Thomas Wood, a Florida attorney. (*See* Opp'n at 2.) Through Mr.

Wood, Defendants negotiated the terms of the Settlement Agreement ("Agreement") and the Injunction. (*See, e.g.,* Pl.'s Mot. Exs 9, 10.) By the time of the filing of the Opposition, however, Prade and AUAP were no longer represented by counsel. (*See* Opp'n at 2.) Though Prade is entitled to litigate the contempt allegations on his own behalf, he may not represent Defendant AUAP, a corporation. Thus, AUAP has yet to appear before the Court in response to Plaintiff's Motion.

The Court concludes that AUAP is subject to an entry of default on Plaintiff's Motion. Notwithstanding its current status, the Court will afford AUAP one final opportunity to appear through counsel. Failing the entry of an appearance by licensed counsel, the Court will be constrained to recommend to the trial court an entry of default.

C.  **Civil Contempt Motion As Against Defendant Prade**

Defendant Prade has opposed Plaintiff's Motion for Civil Contempt on behalf of himself and Defendant AUAP. Because, as explained above, AUAP may not appear without counsel, the Court will consider each of the three contempt grounds only in relation to Prade.

1.  **Legal Standard for Civil Contempt**

In order to succeed on a motion for civil contempt, a moving party must prove (1) the existence of a reasonably clear and unambiguous order and (2) violation of that order by the alleged contemnor. *Armstrong v. Executive Office of the President,* 1 F.3d 1274, 1289 (D.C. Cir. 1993). The party seeking contempt must prove these elements by clear and convincing evidence. *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1183-84 (D.C. Cir. 1981). Unlike with criminal

contempt, a finding of civil contempt does not require willfulness or bad faith on the part of the contemnor.  *See id.*

### 2. AUAP Customer Addresses

As stated above, Plaintiff asserts that Prade has violated the clause of the Injunction requiring him to provide post or e-mail addresses along with the names of AUAP customers already submitted.  (*See* Pl.'s Mot. at 1.)  In opposition, Prade argues that "the word 'list' does not mean or imply Addresses, fax or E-mail [sic]."  (*See* Opp'n at 5.)

Consistent with the requirement that an order be reasonably clear and unambiguous, Federal Civil Rule 65(d) states in part that "[e]very order granting an injunction . . . shall be specific in its terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained[.]"  Fed. R. Civ. P. 65(d). Notwithstanding this language, Rule 65(d)'s mandate for specificity and fair notice may be satisfied by considering the injunction "in light of the circumstances surrounding [its] entry." *Landmark Legal Found. v. EPA,* 272 F. Supp.2d 70, 75 (D.D.C. 2003) (citation omitted). Accordingly, an injunction may incorporate by reference a document with which the enjoined party is familiar.  *See id.*

Here, the circumstances surrounding the entry of the Injunction show that Defendant Prade should have been well aware that he was required to provide addresses for the AUAP customer names he submitted.  The Injunction incorporated by reference the Settlement Agreement (*see* Injunction ¶ 13), signed contemporaneously by Prade, which explicitly permitted Plaintiff to send a letter to "any persons or entities identified by Defendants[.]"  (*See* Pl.'s Mot.

Ex. 12 ("Agreement") ¶ 3(ii).)  The phrasing of the actual form letter was first reviewed by Prade's attorney (*See* Pl.'s Mot. Exs. 9, 10.), and then attached to the end of the Settlement Agreement as Exhibit A.  Moreover, the text of the form letter demarcated a space for the addresses of future recipients.  Prade's proposition that "list" encompasses not more than "names" would render nonsensical the parties' discussions over this letter and its inclusion in the Settlement Agreement.

The plain language of the Injunction itself also shows that Defendant Prade was required to provide more than just the names of AUAP customers.  Specifically, paragraph 12 requires Defendants to provide Plaintiff with a "list" of AUAP customers.[4]  In a similar clause at the end of the same paragraph, however, the Injunction requires Defendants to provide the "names" of third-party recipients of AUAP evaluations.  (*See* Injunction ¶ 12.)  Because the Injunction employs two different terms within similar clauses of the same paragraph, it follows that the two terms were intended to convey different meanings, and that "list" was intended to encompass more than "names."  Were this not so, the Injunction would have used the term "names" in both instances.

Given the language of the Injunction, and the circumstances surrounding its issuance, the Court finds the Injunction reasonably clear and unambiguous in requiring Defendant Prade to provide Plaintiff with addresses of AUAP customers in addition to their names.  Because Prade

---

[4]Defendant Prade argues that he is not required to provide a list of AUAP customers because this clause of the Injunction only mentions "Defendant, AUAP" and not Defendant Prade.  (*See* Opp'n at 11; *see also* Injunction ¶ 12.)  It is unnecessary for the Court to embark upon an interpretation of this clause, as Prade's argument is unavailing for the following reason: Prade, in his capacity as the sole officer, owner, employee of AUAP, and practically the alter ego, is necessarily subject to injunctive orders issued as to AUAP.  *See* Fed.R.Civ.P. 65(d).

has not met this requirement, the Court concludes that he is in violation of the Injunction on this ground.

### 3.     Defendant Prade's Defenses Regarding Customer Addresses

Defendant Prade asserts what amounts to a good faith substantial compliance defense in response to this ground for contempt. In asserting the good faith substantial compliance defense, an alleged contemnor must show "(1) a good faith effort to comply with the court at issue; and (2) substantial compliance with that court order." *Landmark Legal Found.*, 272 F. Supp.2d at 78. Once the complaining party has established a *prima facie* case for contempt, the burden shifts to the alleged contemnor to show such an inability to comply. *See* WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2960.

As to the first prong of the defense, Prade argues that he signed the Injunction truly believing that the term "list" meant that he was to provide only AUAP customer names, and not addresses. (Opp'n at 5.) According to Prade, he confirmed his belief by looking up the definition of "list" in the dictionary, and checking with his lawyer. (*Id.*) Therefore, according to Prade, by turning over a list of customer names, he provided all that he thought he was required to provide. It is unnecessary for the Court to gauge Defendant Prade's purity of heart in holding this unreasonable belief. Because, as stated above, willfulness on the part of the contemnor is not required, it is sufficient here that Prade has violated a reasonably clear Injunction.

As to the second prong, Defendant Prade claims that he has given all he can give because he never recorded any customer addresses. However, as explained in greater detail below, AUAP's "Credential Evaluation Service" Web page lists several individual American institutions

that accepted AUAP customers who received evaluations. (Pl.'s Mot. Ex. 7.) Given Defendant Prade's assertions that he does not send evaluations directly to American academic institutions (*see, e.g.*, Opp'n at 6), the Court cannot see how he would learn such information but through direct communication with AUAP customers. The Court is thus unconvinced that Prade has no addresses of AUAP customers.

### 4. Names of Third-Party Institutions

As stated above, Plaintiff asserts that Defendant also violated the Injunction by providing a fraudulent[5] or incomplete list of names of institutions that received their infringing reports, particularly institutions in the United States. After the entry of the Injunction, Defendant Prade provided Plaintiff with a list of only foreign institutions. Prade claims, however, that because the evaluations were sent directly to AUAP customers, he has no way of knowing which American institutions may have received them.[6]

Defendant Prade's professed ignorance is belied by representations made on the AUAP Web page promoting its "Credential Evaluation Service." The page reproduces one piece of correspondence from a customer praising an evaluation by Defendants that helped the customer's son get accepted at "xxx [sic] University in Arizona." (Pl.s Motion Ex. 7.) On another part of the page, the following statement appears:

---

[5]Plaintiff claims that a portion of the names submitted by Defendant were fraudulent because they were copied verbatim copy from a separate list found by Plaintiff on the Internet. (*See* Pl.'s Mot at 3; Pl.'s Mot. Ex. 2.) Because, without more, there are other plausible explanations for this similarity, the Court will not address this contention.

[6]Prade does not deny that his evaluations might have wound up in the hands of institutions in the United States.

> Students with AUAP course per course evaluations have been accepted at: Harvard, Yale, Cornell, Columbia, U.Penn, Berkeley, Stanford, Duke, Penn State, NYU, Georgetown, Kellogs-Northwestern, John Hopkins, U. of Michigan, Vanderbilt, UCLA, Middlebury, Notre Dame, UNC Chapel Hill, American U., Monterey, USF, Wake Forest, LSU, USC, Universities of Florida, U.Mass, Delaware U., Denver, San Diego, Case Western, George Washinton U, Pepperdine, LSU,Penn State U.   etc.

(*Id.*)  The following statement also appears on the Web page: "AUAP evaluations were accepted by the USCIS ex INS, Ivy League universities and more than 400 US institutions of higher education." (*Id.*)  Prade has attempted to explain that representations made on the AUAP Web site about particular American academic institutions were made in connection with the "Selection + Guaranteed Admission Program," a separate AUAP service.  It is undeniable, however, that the above-quoted representations were made in reference to AUAP's Credential Evaluation program only.  The Court is thus thoroughly unconvinced that Defendant Prade has no knowledge of any American institutions that received AUAP evaluations and concludes that Prade is in violation of the Injunction on this ground.

> 5.      **AUAP Web Site**

Plaintiff's final ground for contempt is Defendant Prade's failure to remove all mention of the AACRAO mark from the AUAP Web site in a timely manner.

The Injunction states, in pertinent part, that "Defendants must immediately remove all AACRAO marks . . . from all publications and advertisements including . . . internet web pages under the control of Defendants."  (Injunction ¶ 10.)  It is not disputed that Defendant Prade violated the clear language of the Injunction when, after its entry, the AACRAO mark persisted on some pages of the AUAP Web site.  (*See* Pl.'s Mot. Exs. 7, 11; Reply Exs. A-E.)

Defendant Prade defends that he is no longer interested in maintaining any AACRAO marks on the AUAP Web site, and that he made an effort to remove all the marks from the site

following the injunction.  Furthermore, Prade asserts that, following the filing of Plaintiff's Motion, he has removed all of the remaining marks shown to him by Plaintiff.

The Court concludes with little difficulty that Defendant Prade violated the clear language of the Injunction by not timely removing all AACRAO marks from the AUAP Web site.  His admittedly less-than diligent attempt to remove the marks[7] falls short of the Injunction's requirement that "all" marks be removed "immediately."  It is not Plaintiff's duty to comb through the Web site and notify Prade of any oversights.  The fact that violations have persisted on the Web site well after the entry of the Injunction leaves the Court in significant doubt that Prade has fully complied to date.

### 6. Violation of the Consent Injunction by Defendant Prade

For the reasons explained above, the Court concludes by clear and convincing evidence that Defendant Prade is in violation of all the Injunction on all three grounds asserted by Plaintiff.  Furthermore, Prade has not responded to Plaintiff's Motion, or to the show cause order, to the satisfaction of this Court.  In its discretion, however, the Court will allow Defendant Prade one final opportunity to comply with the Injunction.  Failure to comply will result in a recommendation to the trial court that Prade be held in contempt and sanctioned.

As stated above, at the October 2, 2006 hearing, Defendant Prade agreed to allow Plaintiff to take an image of his computer hard drive.  (*See* Hr'g Tr. at 3:56.)  Allowing Plaintiff to take an image of Prade's computer hard drive will assist Prade in responding to the trial court's Injunction and help to resolve the dispute over his ability to comply.  In the opinion of the Court, three days is reasonable amount of time to allow for Plaintiff to take the image while

---

[7]At the October 2, 2006 hearing, Defendant stated that his efforts to remove the AACRAO marks were perhaps "not 100 percent."  (Hr'g Tr. at 3:55.)

minimizing disruption to Prade's business operations. However, the Court admonishes Plaintiff to retain only the information from the hard drive image to which it is entitled pursuant to the Injunction. All other information from the image must be treated as highly confidential and then either destroyed or returned to Prade. The Court also admonishes Plaintiff that its duties of confidentiality still apply with regard to any information that it may be entitled to retain. *See, e.g.,* Injunction ¶ 13.

### III.  CONCLUSION

For the foregoing reasons, it is on this __27th__ day of October, 2006, hereby

**ORDERED** that Plaintiff's Motion for Civil Contempt and Compensatory Relief is **DEFERRED** until November 27, 2006. Before that time, Defendant AUAP shall be afforded one final opportunity to enter an appearance before this Court through licensed counsel. Also before that time, Defendant Prade shall be afforded one final opportunity to comply with the April 18, 2006 Consent Judgment and Injunction by (1) identifying the individuals listed in Exhibit 5 of Plaintiff's Memorandum in Support of Plaintiff's Motion for Civil Contempt and Compensatory Relief by providing by last known business or home address or last known e-mail address; (2) identifying all academic, governmental, or corporate (both for-profit and non-profit) institutions in the United States that received any documents prepared by Defendants containing the AACRAO mark, marks that are confusingly similar to the AACRAO marks, or any reference to affiliation between defendants and AACRAO; (3) removing all AACRAO marks or marks that are confusingly similar to the AACRAO marks, from any Web page under the control of Defendants; and (4) presenting for inspection for a period of three days any computer hard drive used in connection with any document referring or relating to the use of any ACCRAO mark,

marks that are confusingly similar to the AACRAO marks, or any reference to affiliation between Defendants and AACRAO. And it is further

**ORDERED** that all Parties shall appear before this Court on Friday, December 15, 2006 at 2:30 p.m. in Courtroom 7 for a hearing to determine whether there is need to recommend to the trial court that (1) Defendant AUAP be held in default of Plaintiff's Motion for Contempt; and (2) Defendant Prade be held in contempt of Plaintiff's Motion and sanctioned.

**SO ORDERED.**

/s/
ALAN KAY
UNITED STATES MAGISTRATE JUDGE