UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN ASSOCIATION OF ) <br> COLLEGIATE REGISTRARS AND ) <br> ADMISSIONS OFFICERS, ) <br>       Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMERICAN UNIVERSITIES ) <br> ADMISSION PROGRAM, INC., *et al.*, ) <br> ) <br>       **Defendants.**       ) | Case No. 06-0137 |

**DEFENDANTS' SECOND SUPPLEMENTAL OPPOSITION TO
PLAINTIFF'S MOTION FOR CIVIL CONTEMPT AND COMPENSATORY RELIEF**

COME NOW THE AMERICAN UNIVERSITIES ADMISSION PROGRAM, INC. ("AUAP, INC.") and DR. JEAN NOEL PRADE ("Dr. Prade") (collectively, "Defendants"), in the above-captioned proceeding, by their undersigned counsel, and for their Second Supplemental Opposition to the Motion for Civil Contempt and Compensatory Relief ("Motion") filed by **Plaintiff AMERICAN ASSOCIATION OF COLLEGIATE REGISTRARS AND ADMISSIONS OFFICERS** ("AACRAO" or "Plaintiff"), state as follows:

I.  **PLAINTIFF MISREPRESENTS THE FACTS WHEN IT ALLEGES THAT DEFENDANTS "REFUSE" TO GIVE THE NAMES OF ITS 500 "CREDENTIAL EVALUATION SERVICE" CLIENTS**

Plaintiff misrepresents the facts when it states in its "Second Statement of Non-compliance" at page 2 that "Critically and quite inexplicably, defendants still maintain that their obligation under the Injunction is limited to providing addresses only for Prade's "Selection + Guaranteed Admission Program. . ." Plaintiff seems bent on mischaracterizing Defendants' position at every opportunity, apparently with the motivation of prejudicing the Court against Defendants for the purpose of obtaining an award of attorneys fees and the imposition of

$10,000.00 to "monitor" Defendants' website. See Plaintiff's "Reply to Defendants' Supplemental Opposition," dated January 24, 2007, p. 3.

Whatever the motivation, AACRAO's misinformation campaign must be rejected by this Court. Defendants have repeated in their pleadings and in argument before the Court as recently as January 22, 2007 that it is **not physically possible** for them to produce the addresses of AUAP's customers in AUAP's "Credential Evaluation Service" program. In the Affidavit of Dr. Jean-Noel Prade, attached hereto as Plaintiff's Exhibit 1 and incorporated herein, Dr. Prade reiterates what he has tried before to explain: **"I gave AACRAO the names of the 500 or so Evaluation Service Program clients, but I could not give AACRAO any addresses because they do not exist. . .** AACRAO can verify this by examining the hard drives of the two computers I have provided to the AACRAO attorneys." [Emphasis added.] See Prade Affidavit at para. 4.

In explaining why the approximately 500 Credential Evaluation Service customers' addresses do not exist, Dr. Prade states in his Affidavit: "As I stated before, the e-mail addresses of the AUAP customers in its Evaluation Service Program are deleted when their Evaluation Report is completed. . ." *Id*. AACRAO belittles this rationale, apparently unable to understand why AUAP would retain useless information in its computer records. However, AACRAO's unwillingness (or inability) to understand AUAP's reasoning for not keeping useless information must be viewed with skepticism. At worst, it is a further attempt to mislead the Court with unnecessarily disparaging hyperbole regarding AUAP's business practices. See Plaintiff's "Second Statement of Non-compliance" at page 6. AACRAO has had now over 2 months to examine the hard drives of AUAP's computers, yet AACRAO is unable to show any

information whatsoever to indicate that Dr. Prade is not telling the truth about the non-existence of the street addresses or e-mail addresses of AUAP's Credential Evaluation Service customers.

How can Defendants be sanctioned for not producing information that does not exist? The answer to this question is that Defendants should **_not_** be sanctioned for being unable to produce information that does not exist.

## II. AACRAO MISSTATES THE DEALINGS BETWEEN THE PARTIES PRIOR TO ENTRY OF THE INJUNCTION IN THIS CASE

Again, in a desperate effort to garner an advantage in this proceeding, AACRAO misrepresents the nature of the interaction between the parties prior to entry of the Injunction in this case. In its Second Statement of Non-compliance at page 2, AACRAO states that "The Injunction was drafted by the parties. . ." Dr. Prade's recollection of the matter is different. He states in paragraph 3 of his attached Affidavit:

> . . .It is completely untrue that the "Injunction was drafted by the parties" as the AACRAO attorneys say in their "Second Statement of Non-compliance" (dated January 19, 2007). The AACRAO attorney wrote the Injunction and presented it to me for signature. I had no part whatsoever in the "drafting" of the Injunction.

AACRAO's quest for "justice" seems to be built on mischaracterizations and facts not in evidence.

More to the point, however, is that Defendants never made any affirmative representations to provide all of the names and addresses of all of AUAP's clients. Dr. Prade states in his attached Affidavit at para. 4:

> . . .I never made any statement to [AACRAO] or their attorneys at or before the time I signed the Settlement Agreement with AACRAO on April 12, 2006, relative to my ability to provide them "all" of the addresses for "all" customers of AUAP. At the time when AACRAO and I were negotiating a settlement of its lawsuit, I agreed I would provide the addresses of AUAP customers that I had. This statement was a commitment to provide AACRAO the addresses that AUAP and I had in either the computer or in the "hard-copy" files of the "Selection + Guaranteed Admission Program" ("Guaranteed Admission Program"). (No such "hard-copy" files exist for the other program offered by

3

>AUAP, the "Credential Evaluation Service.")   I have complied with that commitment, by producing the client list to AACRAO's attorney on January 21, 2007, for the Guaranteed Admissions Program clients of AUAP.

It is significant that AACRAO has not substantiated its claims of "bad faith" against the Defendants by producing evidence of Defendants' alleged promises to provide the 500 addresses for its "Credential Evaluation Program" customers.  **That is because such evidence does not exist.**  Moreover, all communications between the parties pertaining to settlement discussions are inadmissible as evidence, and any reliance thereon by the Court in deciding Plaintiff's motion for sanctions would be highly problematic.

### III. SANCTIONS THAT INCLUDE "ANNUAL INSPECTIONS" AND A "MONITORING FUND" FOR AUAP'S WEBSITE ARE UNWARRANTED AND EXCESSIVE

In its Reply to Defendants' Supplemental Opposition, Plaintiff AACRAO requests:

>. . .an order granting AACRAO, at least annually, the right to undertake a site inspection of defendants' property. . . [and] at least $10,000 to set up a program and to pay an employee for monitoring defendants' websites and to fund the cost of notifying AACRAO members and other universities and colleges that AUAP and Prade are in no way affiliated with AACRAO. . .

Such measures are extreme, unwarranted and unduly penal in nature under the circumstances presented in this case.

First, "AUAP has only one website," as Dr. Prade states in his attached Affidavit at para. 9, and "and it does not need 'monitoring.'"   Moreover, AACRAO's counsel conceded at the hearing held in this matter on December 15, 2006 that the AUAP website did not contain any references to AACRAO.   Dr. Prade also states in para. 6 of his Affidavit:

>. . .I have used diligent efforts to remove all references to AACRAO from the AUAP website.  As of approximately July 17, 2006, all remaining references to AACRAO have been removed from the AUAP website. . .

>AACRAO's implication that AUAP operates "multiple" websites is (again) an

4

unsubstantiated allegation calculated to unfairly prejudice the Court in considering whether to issue sanctions in this case.  Given the existence of sophisticated Internet search engines, it would not be difficult for AACRAO to show that there are other websites on the Internet that contain references to AUAP or to Dr. Prade, or that refer to their telephone numbers, facsimile numbers or e-mail addresses.  The fact is that AACRAO cannot produce substantiation for its allegations, and without such substantiation, there is no basis for the Court to award AACRAO $10,000 to use as a "website monitoring fund."

Second, it is disingenuous in the extreme for AACRAO to request that Defendants "fund the cost of notifying AACRAO members and other universities and colleges that AUAP and Prade are in no way affiliated with AACRAO. . ."  The fact is that AACRAO can send an e-mail to its members at virtually no cost.  Presumably, AACRAO has already notified its members that "AUAP and Prade are in no way affiliated with AACRAO."  However, the Injunction in this case does not give AACRAO *carte blanche* to notify *any* person or institution that "AUAP and Prade are in no way affiliated with AACRAO. . ."  The Injunction by its terms only allows limited communications with third parties, and it is neither fair nor necessary to impose costs on Defendants when the Injunction did not require such an assessment and the cost of e-mailing to parties with whom communication is authorized is negligible.

Third, an order granting AACRAO "the right to undertake a site inspection of defendants' property" would be to grant AACRAO an open-ended license to disrupt the business of not only Dr. Prade, but also that of his wife, with whom he shares business premises.  The correct approach would be for AACRAO to prove that a violation of the Injunction has occurred and for it then to request an appropriate remedy.  It is difficult to imagine what good could come

5

of this Court giving AACRAO the right to invade AUAP and Dr. Prade's goods or premises on an annual basis, without there being some substantiated reason for doing so.

### IV. AUAP HAS NOT COMMUNICATED WITH ALL THE UNIVERSITIES LISTED ON ITS WEBSITE

The appearance of the names of some universities on the AUAP website does not mean that AUAP has communicated with those institutions. As Dr. Prade explains in his attached Affidavit:

> . . . AUAP clients have e-mailed or called AUAP to say that they (the clients) had obtained admissions to the institutions such as those mentioned by AACRAO's attorneys in their "Second Statement of Non-compliance" (dated January 19, 2007). Those universities include: Bowling Green University, Cleveland State University, Flagger College, Kellogg College and Howard University. . .Since AUAP has not communicated with these universities, their addresses are not part of the Court's requirements under the injunction.

Why is it so far-fetched that AUAP would list in its website universities that admitted its clients and customers? In framing this allegation, AACRAO almost completely ignores the fact that Defendants have provided the names of approximately 100 such institutions with which they did communicate in the past.

If AACRAO wishes to issue a letter to those institutions listed on the website stating that AUAP is not affiliated with it, AUAP would not object. However, AACRAO has never made such a request to the Defendants, choosing rather to seek the intervention of this Court as though such were required at every turn.

### V. AACRAO COMPLAINS WITH NO BASIS THAT AUAP "HAS STILL FAILED TO IDENTIFY ALL INSTITUTIONS"

Inexplicably, AACRAO complains that "Prade and AUAP have still failed to name all of the academic, governmental and corporate institutions that received documents bearing

plaintiff's trademark or confusingly similar marks. . ." See Plaintiff's Reply to Defendants' Supplemental Opposition, p. 7.  AACRAO's complaint is inexplicable due to the fact, *inter alia,* that Dr. Prade has already stated that AUAP has not communicated with "governmental or corporate" entities in his previous Affidavit.  Dr. Prade in his attached Affidavit at paragraph 8 states:

> . . . Again, I repeat what I stated in my previous Affidavit: AUAP does not communicate with corporations and government agencies, so AUAP does not have any such addresses to provide to AACRAO. . .

In addition, AACRAO has had the computer hard drives of AUAP and Dr. Prade for nearly two months and has not been able to show that AUAP has had any communications whatsoever with "corporations and government agencies."  This fact alone undermines the credibility of AACRAO's complaints regarding the referenced information, even if Dr. Prade's affirmative statement to the contrary was not considered.

Once more, the question that begs to be answered is, how can the Defendants be sanctioned for not producing information that does not exist?

## **CONCLUSION**

It is AACRAO that should be chastised for repeated and extensive references to alleged "facts" outside the record in this proceeding.  AACRAO's references to what the "World Intellectual Property Organization" has "held" are not supported by any evidentiary finding in this proceeding and should be disregarded in considering Plaintiff's Motion for Civil Contempt and Compensatory Relief.  See Plaintiff's Reply to Defendants' Supplemental Opposition at pp. 2-3.  In addition, AACRAO's repeated references to settlement negotiations between the parties is likewise improper and should be disregarded. *Id.,* p. 4.

The Defendants in this proceeding have at this point provided all the information that they can reasonably be expected to provide to AACRAO. As detailed above, AACRAO's complaints about Defendants not providing "customer addresses" for AUAP's "Credential Evaluation Service" clients and names and addresses of "corporate and governmental institutions" are false and misleading. **That information cannot be produced because it does not exist.** Defendants cannot – and should not – be sanctioned for not producing information that does not exist.

Imposition of a fine will almost certainly put AUAP out of business and will drive Dr. Prade into personal bankruptcy. See Prade Affidavit, para. 9. On the other hand, AACRAO has not submitted any evidence regarding the actual harm it has suffered as a result of the alleged "violations" by Defendants of the Injunction in this case. Moreover, AACRAO can show no continuing violations of the Injunction by Defendants. AACRAO's allegations at this point boil down to Defendants' not providing information that does not exist (or that is arguably not required under the Injunction). Defendants should not be required to pay for AACRAO's attorneys fees and computer expert fees, inasmuch as AACRAO of its own volition decided to expend inordinate amounts of computer expert time to confirm the non-existence of computer data and attorneys fees to require Defendants to produce information that does not exist. It would be highly inequitable to require Defendants to pay for proceedings, pleadings and computer analysis that were not necessary and which Defendants could not control or mitigate.

**WHEREFORE,** Defendants respectfully request that this Court deny Plaintiff's Motion for Civil Contempt and Compensatory Relief.

**Respectfully submitted,**

/s/_____
**S. Ricardo Narvaiz, Bar No. 317347**

       **1300 Spring Street, Suite 500**
       **Silver Spring, Maryland 20910**
       **Telephone: (301) 628-2066**
       **Facsimile: (301) 588-0854**
       **Counsel for Defendants**

## CERTIFICATE OF SERVICE

 I hereby certify that on the 7th day of February, 2007 a copy of the foregoing second supplemental opposition in the above-referenced case was sent by e-mail and U.S. mail, postage prepaid, to the following:

      Christopher P. Murphy, Esq.
      John K. Hsu, Esq.
      Arent Fox PLLC
      1050 Connecticut Avenue, N.W.
      Washington, D.C. 20036


    /s/
    _____
    S. Ricardo Narvaiz