# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN ASSOCIATION OF
COLLEGIATE REGISTRARS AND
ADMISSIONS OFFICERS,

        Plaintiff,

   v.

AMERICAN UNIVERSITIES ADMISSION
PROGRAM, INC., *et al.,*

        Defendants.

Civil Action No. 06-137 (ESH/AK)

## REPORT AND RECOMMENDATION

Pending before the undersigned are Plaintiff's Motion for Civil Contempt and Compensatory Relief ("Motion") [18],[1] Defendants' opposition thereto ("Opposition") [19], and Plaintiff's reply ("Reply") [21].  On October 27, 2006, the undersigned issued a Memorandum Order deferring ruling on Plaintiff's Motion.  Since the deferral of Plaintiff's Motion, the undersigned held three status hearings and received several additional briefings from the parties.[2] For the reasons set forth below, the undersigned recommends that Plaintiff's Motion be denied.

---

[1] The trial court referred Plaintiff's Motion to this Court on August 11, 2006.

[2] These additional briefings are: Plaintiff's Statement of Defendants' Continued Non-Compliance [27], Defendants' Opposition to Plaintiff's Motion [28]; Defendants' Supplemental Opposition to Plaintiff's Motion [29]; Plaintiff's Second Statement of Defendants' Continued Non-Compliance [30]; Plaintiff's Reply to Defendants' Supplemental Opposition [31]; Defendants' Second Supplemental Opposition to Plaintiff's Motion [32]; and Plaintiff's Reply to Defendants' Second Supplemental Opposition [34].

I.    **FACTUAL BACKGROUND**[3]

On January 25, 2006, Plaintiff American Association of Collegiate Registrars and

Admissions Officers ("AACRAO" or "Plaintiff") brought this trademark action against the

American Universities Admission Program, Inc. ("AUAP") and AUAP's sole officer, Jean-Noel

Prade ("Prade") (collectively the "Defendants").  Plaintiff alleged, among other things, that

Defendants unlawfully had used the "AACRAO" mark, and claimed affiliation with AACRAO,

on the AUAP Web site and on reports prepared by AUAP for its customers.  (*See generally* First

Am. Compl. [9].)

On April 18, 2006, the trial court entered a Final Consent Judgment and Injunction

("Injunction") [17], which all the parties had signed.  Among other things, the Injunction ordered

Defendants to: (1) provide Plaintiff with "a list of all AUAP customers and clients for whom

Defendants have prepared reports, including evaluations, containing any AACRAO mark or any

reference to affiliation between AUAP and AACRAO[;]" (2) provide Plaintiff with a list of "the

names of any and all third party recipients of such documents[;]" and (3) remove all AACRAO

marks from Web pages under the control of Defendants.  (*See* Injunction ¶¶ 10, 12.)

Following the issuance of the Injunction, the parties disagreed over the extent of

Defendants' obligations under it.  Plaintiff filed the instant Motion on July 17, 2006, alleging that

Defendants had violated the Injunction by failing to: (1) provide post or e-mail addresses for the

more than 500 customer names they had submitted; (2) provide names of all the institutions that

received their infringing reports, particularly institutions in the United States; and (3) remove all

---

[3]The initial background facts concerning this matter have been set forth more fully in the
undersigned's October 27, 2007 Memorandum Order.  *See* Mem. Order of 10/27/2007 [25] at 2-
4.

AACRAO marks from AUAP's Web pages.  (Mot. at 1.)

Prade, in an Opposition to the Motion, claimed that the Injunction did not require Defendants to turn over customer addresses and, in any event, such records had not been kept for AUAP's "Credential Evaluation Service" customers.  (*See* Opp'n at 6-7.)  Prade also claimed that because the evaluations were generally given directly to AUAP's "Credential Evaluation Service" customers, Defendants had no direct contact with, or knowledge of, third-party recipients of the materials.  (*See* Opp'n at 7-8.)  Finally, Prade argued that any remaining AACRAO marks on the AUAP Web site resulted from an unintentional oversight and were removed as soon as they had been identified by Plaintiff.  (*See* Opp'n at 3-4.)

In its Reply, Plaintiff argued that Defendant AUAP should be held in default of the Motion for failing to respond through licensed counsel, as is required of corporations in federal court.  (Reply at 1.)

After a hearing on this matter, the undersigned issued a Memorandum Order on October 27, 2006 finding that Defendant Prade had violated the Injunction on all three grounds asserted by Plaintiff.  Mem. Order [25] at 12.  The undersigned also found that because Defendant AUAP had failed to respond to the Motion through licensed counsel, it was subject to an entry of default.  *Id.* at 6.  However, the undersigned deferred ruling on the Motion and gave Prade and AUAP until November 27, 2006 to come into compliance with the Injunction and to appear through licensed counsel, respectively.  *Id.* at 13.  Prade was also directed to "present[] for inspection for a period of three days any computer hard drive" that was used in connection with his infringing activity.  *Id.*

Since the issuance of the October 27 Memorandum Order, the undersigned has monitored

Defendants' compliance efforts through additional briefing from the parties[4] and through three

additional hearings (held on December 15, 2006, January 22, 2007 and June 14, 2007). The

following list details the actions Defendants have taken since October 27:

(1)     Defendants removed all references to Plaintiff from the AUAP Web site (*see*
        Defendants' Opp'n to Plaintiff's Mot. [28] at 4 & Ex. 2);

(2)     On November 22, 2006, Defendants obtained representation through counsel (*see*
        Entry of Appearance [26] by S. Ricardo Narvais, dated Nov. 22, 2006);

(3)     On November 20, 2006, Defendants provided Plaintiff the following items: (I) a
        list of addresses for 38 customers of AUAP's "Selection + Guaranteed
        Admissions Program"; (ii) a list of approximately 85 academic institutions that
        had received correspondence from AUAP; and (iii) the laptop computer used by
        Prade in conducting AUAP business (*see* Pl.'s Statement of Defs.' Continued
        Non-Compliance [27], Ex. A);

(4)     On December 21, 2006, Defendants provided Plaintiff with a second computer,
        primarily used by Defendant Prade's wife (*see* Defs.' Supp. Opp'n at 1-2); and

(5)     On January 16, 2007, Defendants sent Plaintiff the following additional items: (I)
        a list of addresses for the approximately 75 clients of AUAP's "Selection +
        Guaranteed Admission Program" between 2000 and 2006 (which included the 38
        addresses previously submitted); and (ii) a list of more than 100 colleges and
        universities that had received correspondence from AUAP since 2000 (which

─────────────

[4]*See* note 2, *supra*. The undersigned has considered all of these briefings in making this
recommendation because they were useful in monitoring Defendants' continuing efforts to
comply with the Injunction.

included the names of the colleges and universities previously submitted);

## II.    DISCUSSION

### A.    Legal Standard for Civil Contempt

In seeking civil contempt, a party must show (1) the existence of a reasonably clear and unambiguous order and (2) violation of that order by the alleged contemnor. *Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993). The moving party must prove these elements by clear and convincing evidence. *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1183-84 (D.C. Cir. 1981). Unlike with criminal contempt, a finding of civil contempt does not require willfulness or bad faith on the part of the contemnor. *See id.* However, a violation of a court order does not lead ineluctably to the imposition of civil contempt. Once the moving party has made a prima facie case for civil contempt, the alleged contemnor may defend against contempt by showing a justification for his noncompliance. *S.E.C. v. Bilzerian*, 112 F. Supp. 2d 12, 16 (D.D.C. 2000). Two such justifications are "good faith substantial compliance" and "inability to comply." *See NAACP, Jefferson County Branch v. Brock*, 619 F. Supp. 846, 850 (D.D.C. 1985); *see also Bilzerian*, 112 F. Supp. 2d 12 (discussing "inability to comply" defense); *Landmark Legal Foundation v. E.P.A.*, 272 F. Supp. 2d 70, 78-79 (D.D.C. 2003) (discussing "good faith substantial compliance defense).

Ultimately, the decision whether to hold a party in contempt is within the court's sound discretion. *See Cobell v. Norton*, 195 F. Supp. 2d 1, 2 (D.D.C. 2002), *vacated on other grounds*, 226 F. Supp. 2d 175 (D.D.C. 2002); *see also Marshall v. Local Union No. 639, Int'l Brotherhood of Teamsters*, 593 F.2d 1297, 1303 (D.C. Cir. 1979) ("[C]ourts need not impose the contempt

sanction for every violation."). Courts rightly exercise the contempt power with caution, as it is a

potent weapon. *Teamsters Local Union No. 96 v. Washington Gas Light Co.*, 466 F. Supp. 2d

360, 362 (D.D.C. 2006) (Huvelle, J.)

      **B.**     **Plaintiff's Present Request for Contempt and Sanctions**

      Defendants' aforementioned efforts notwithstanding, Plaintiff maintains that Defendants

should nonetheless be held in contempt and sanctioned. According to Plaintiff, Defendants

continue to violate the Injunction in two ways:[5] *First*, although Defendants may have provided a

list of the approximately 75 customers of their "Guaranteed Admissions Program," they failed to

provide addresses for the over 500 customers of their "Credential Evaluation Service." *Second*,

Defendants failed to name all of the academic, governmental and corporate institutions that

received infringing materials. Although Defendants have provided a list of academic institutions,

Plaintiff notes that absent from the list are names of many academic institutions "proudly named

on AUAP's website." (Dkt. No. 30 at 7.)

      In response, Defendants provide an affidavit from Prade detailing the distinction between

AUAP's "Guaranteed Admission Program" and its "Credential Evaluation Service." According

to Prade, records from the "Guaranteed Admission Program" were kept because Prade worked

closely with the Program's customers over an extended period of time. (*See* 1/16/07 Affidavit ¶

9.) Defendants thus were able to provide Plaintiff with addresses of these customers and the

names of the academic institutions with which Defendants communicated pursuant to the

Program.

_____

     [5]At the December 15, 2006 hearing, counsel for Plaintiff conceded that Defendants had
removed all mention of AACRAO from the AUAP Web site.

By contrast, records from the "Credential Evaluation Service" were not kept because Defendants interacted with each customer only briefly. (*Id.* ¶ 5.) As a result, Defendants could only provide Plaintiff with the 500 customer names, and no corresponding addresses. Also, because Defendants generally communicated only with these customers, and not with third-party institutions, Defendants were unable to provide names of any third-party recipients of evaluations.[6] (*Id.* ¶¶ 14-15.)

Defendants also acknowledge that the AUAP Web site contains references to several universities which were not named in Defendants' submissions to Plaintiff. According to Defendants, names of those institutions were not provided to Plaintiff because Defendants never communicated with them directly. (2/13/07 Affidavit ¶ 7.) Defendants state that "[i]f AACRAO wishes to issue a letter to those institutions . . . stating that AUAP is not affiliated with it, AUAP would not object." (Defs.' Second Supp. Opp'n [32] at 6.)

At this stage, Plaintiff no longer strongly contends that Defendants possess the missing names and addresses.[7] (*See* 1/22/07 Hr'g Tr. (Plaintiff states that primarily seeking compensation for costs and prospective sanctions.)) According to Plaintiff, regardless of whether Defendants actually had the missing names and addresses, Defendants agreed under the

---

[6]Prade does admit that Defendants may have sent evaluations directly to universities on a few occasions, but adds that records of any such communications were not kept. (1/16/07 Affidavit ¶¶ 14-15.)

[7]At the June 14, 2007 hearing, counsel for Plaintiff stated that they do not have any evidence that Defendants possess the missing names and addresses. However, counsel reiterated Plaintiff's request to inspect Defendants' offices to ensure compliance with the Injunction. For the reasons set forth in Section II-C, *infra*, the undersigned recommends that this request for inspection be denied.

Injunction to provide all of them.[8]  (*See* Pl.'s Second Statement of Defs' Continued Non-Compliance [30] at 6-7.)  Plaintiff thus cites these insufficiencies chiefly to illustrate Defendants' bad faith in entering into the Injunction and their subsequent indifference to these contempt proceedings.  (*Id.*;*see also* Pl.'s Reply to Defs.' Supp. Opp'n.)   In support of this position, Plaintiff also points to Defendants' repeated delay in removing AACRAO marks from the AUAP Web site (*see* Pl.'s Reply to Defs.' Supp. Opp'n at 2), as well as their allegedly false assertions at the December 15 hearing that AUAP used only one computer  (*see* Pl.'s Second Statement of Defs' Continued Non-Compliance at 7-8).

From this, Plaintiff requests that the court impose both compensatory and "prospective" sanctions upon Defendants.  Plaintiff argues that it should be granted compensatory relief to remedy the harm caused to it by Defendants' failure to fully comply, and to cover the costs and fees associated with bringing legal action to enforce the Injunction.  Also, because of Defendants' alleged bad faith and indifference to Plaintiffs' trademark rights and to these contempt proceedings, Plaintiff requests that prospective sanctions be entered to ensure Defendants' future compliance with the Injunction.  The proposed prospective sanctions include: (1) periodic inspection of Defendants' premises (Pl.'s Second Statement of Defs' Continued Non-Compliance at 8; Pl.'s Reply to Defs.' Supp. Opp'n at 2); (2) $10,000 to set up a program for monitoring the AUAP Web site and to fund the cost of notifying AACRAO members and

---

[8]At the June 14, 2007 hearing, counsel for Plaintiff also claimed that Defendant Prade told the undersigned at the October 2, 2006 hearing that he could provide all of the names and addresses sought by Plaintiff.  After reviewing the transcript of the October hearing, the undersigned finds no such statement by Prade.  (*See* 10/2/2006 Hr'g Tr.)  Prade did, however, indicate that he could provide the names and addresses for AUAP's Guaranteed Admissions Program.  (*See* 10/2/2006 Hr'g Tr. at 3:10.)

other entities that AUAP and Prade are in no way affiliated with AACRAO (Pl.'s Reply to Defs.' Supp. Opp'n at 3); and (3) a schedule imposing fines for each future violation of the Injunction (*id.*).

In response, Defendants submit a second affidavit from Prade swearing, *inter alia*, that: (i) while negotiating the Injunction, he never promised to provide customer addresses that he did not have (2/13/07 Affidavit ¶¶ 4-5); (ii) he took no part in drafting the Injunction (*id.* ¶ 3); and (iii) Plaintiff's proposed $10,000 sanction for a Web site monitoring program would "put AUAP out of business and drive [Prade] into personal bankruptcy" (*id.* ¶ 9).

## C.    Analysis

Based on the briefing of the parties, the exhibits submitted therewith, the representations made at the hearings held on this matter, and the entire record in this case, the undersigned concludes that the circumstances do not warrant an entry of civil contempt against Defendants.

As an initial matter, the undersigned is satisfied from the evidence that Defendants have complied with the Injunction to the fullest extent possible, are unable to comply any further. Since the October 27 Memorandum Order, Defendants hired an attorney, shipped both business computers to Plaintiff, and compiled a detailed list of all the names and addresses they had. It strains credulity to think that at this stage, Defendants are merely "holding out" against Plaintiff, and in fact possess the missing names and addresses.[9]

Furthermore, the undersigned finds that the "prospective" and compensatory sanctions

---

[9]At the June 14, 2007 hearing, counsel for Plaintiff stated that, according to Plaintiff's forensic expert, a third computer may have been used by Defendants. (6/14/2006 Hr'g Tr. at 1:54.) However, counsel did not provide any evidence for the existence or use of such a computer, nor did he request that Defendants produce one.

sought by Plaintiff would be inappropriate. Citing *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529 (11th Cir. 1986), Plaintiff argues for "prospective" sanctions on the basis that Defendants have shown indifference throughout these contempt proceedings. (*See* Pl.'s Reply to Defs.' Supp. Opp'n.) Although the undersigned does not deny a measure of indignant heel-dragging on the part of Defendants initially, such behavior did not rise to the level of flagrant indifference contemplated in *Sizzler*. On the contrary, the course of these proceedings have demonstrated to the undersigned Defendants' willingness to cooperate with the directives of the court. Moreover, the undersigned finds no evidence in the record indicating that Defendants are likely to engage in new trademark infringement against Plaintiff, or engage in further violations of the Injunction itself. The undersigned thus finds prospective sanctions inappropriate under the present circumstances.

The undersigned also finds that compensatory sanctions would also be inappropriate. These costly proceedings against Defendants, involving the use of expensive forensic computer experts, have proved little to anyone except what Defendants have asserted since these contempt proceedings began: that they did not keep good records of their "Credential Evaluation Service" customers. Both sides have now incurred legal fees and costs litigating a difference of opinion over the meaning of a few lines in the Injunction. Although the undersigned ultimately agrees with Plaintiff's interpretation of the Injunction, *i.e.* that it required Defendants to provide addresses for its "Credential Evaluation Service" customers, the language of the Injunction is not so crystal clear as to be unmistakable. Furthermore, the undersigned finds that imposing such a monetary sanction upon Defendants would serve more to cripple them than to remedy the harm to Plaintiff. The undersigned thus concludes that compensatory sanctions would be inappropriate

under the present circumstances.

The Defendants should not assume that this recommendation to the trial court is a vindication of their conduct and compliance following the entry of the Final Consent Judgment and Injunction signed on April 18, 2006.  The Injunction remains in effect and if Defendants in the future violate any of its provisions they may subject themselves to a show cause order and monetary sanctions.

III.    **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that Plaintiff's Motion for Civil Contempt and Compensatory Relief be denied.

IV.    **REVIEW BY THE DISTRICT COURT**

The parties are hereby advised that under the provisions of Local Rule 72.3 (b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).  If this Report and Recommendation is served on the parties by mail, calculation of the time period for filing written objections is as follows: 10 business days (excluding weekends and holidays) plus three calendar days (including weekends

and holidays). *See CNPq-Conselho Nacional De Desenvolvimento Cientifico E Technological v.*

*Inter-Trade, Inc.,* 50 F.3d 56, 58 (D.C. Cir. 1995) (*per curiam*).


DATE:   July 5, 2007               /s/
                                    ALAN KAY
                                    UNITED STATES MAGISTRATE JUDGE