# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN ASSOCIATION OF COLLEGIATE | ) | |
| REGISTRARS AND ADMISSIONS | ) | |
| OFFICERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0137 (ESH/AK) |
| | ) | |
| AMERICAN UNIVERSITIES ADMISSION | ) | |
| PROGRAM, INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFF THE AMERICAN ASSOCIATION OF
## COLLEGIATE REGISTRARS AND ADMISSIONS OFFICERS'
## OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMENDATION

## <u>TABLE OF CONTENTS</u>

I.      The Report  Failed to Consider Defendants Were Adjudged
        Trademark Infringers ................................................................................... 4

II.     The Report Failed to Consider Evidence That Defendants Are Part of a
        Diploma Mill Scheme .................................................................................... 4

III.    The Report Failed to Consider Evidence that Defendants Were Known to
        Willfully Infringe Trademarks of Others .................................................... 5

IV.     The Magistrate Improperly Created a New "Continue to Violate the
        Injunction" Standard For Contempt ........................................................... 6

V.      The Magistrate's Finding that Defendants "Substantially Complied" With
        The Injunction Is Without Factual or Legal Basis ...................................... 7

VI.     The Magistrate's Finding that Defendants Acted in Good Faith is Without
        Factual or Legal Basis ................................................................................ 10

VII.    AACRAO Never Conceded That Defendants Don't Possess the Missing Names
        and Addresses .............................................................................................. 14

VIII.   The Court Must Enter Some Sanction Against These Defendants ............ 15

/204727LDR.1

**PLAINTIFF THE AMERICAN ASSOCIATION OF
COLLEGIATE REGISTRARS AND ADMISSIONS OFFICERS'
OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMENDATION**

Plaintiff The American Association of Collegiate Registrars and Admission Officers ("AACRAO") respectfully objects to the Magistrate's July 5, 2007 final Report and Recommendation urging that this Court deny AACRAO's motion for contempt and sanctions (Docket No. 18). In the October 27, 2006 preliminary report (Docket No. 25), the magistrate found that AACRAO had proven by clear and convincing evidence that defendants Prade and American Universities Admission Program ("AUAP") were in violation of this Court's Injunction on all counts presented. Yet in the final Report and Recommendation, ignoring the previous findings of contempt and improperly focusing solely on the court-supervised conduct of the defendants following the violation of the Injunction (during the period when the Magistrate "monitored" defendants' conduct), the magistrate recommends that AACRAO's motion be denied.

Respectfully, the Magistrate's report makes critical errors and omissions in both facts and analysis as set forth in detail below. Most troubling, the report ignores the real and serious impact this recommendation, if accepted, will have on AACRAO and indeed other trademark owners battling against willful infringers like Prade and AUAP. AACRAO, on behalf of all of its member colleges, universities, and admission officers, is at the front line of the battle against diploma mills – those groups that create false credentials – and those like Prade and AUAP who certify those false credentials as legitimate. In order for these diploma mills to succeed, they need the imprimatur of legitimacy – legitimacy stolen by Prade and others like him by claiming a false association with respected institutions like AACRAO. For those like Prade and AUAP, the Magistrate's weak warning that "Defendants should not assume that this recommendation to the

/204727LDR.1

trial court is a vindication of their conduct" is nothing less than a clear victory for the bad guys.

Report at 11. Most certainly, without some court-sanctioned consequence for defendants'

violation of the Injunction, defendants will continue business as usual.

AACRAO's objections are as follows:

**1.    The Report Failed to Consider Defendants Were Adjudged Trademark Infringers.**

The report begins with the proposition that AACRAO "*alleged*, among other things, that

Defendants unlawfully had used the 'AACRAO' mark, and claimed affiliation with AACRAO."

Report at 2 (emphasis added). To be precise, defendants admitted and were adjudged to have

infringed the trademarks of AACRAO, falsely designated their products as affiliated with

AACRAO, and falsely advertised their product as affiliated with AACRAO. *See* Final Consent

Judgment and Injunction at 2 (Docket No. 17).

**2.    The Report Failed to Consider Evidence That Defendants Are Part of a Diploma Mill Scheme.**

While the Magistrate correctly notes that a finding of willfulness on the part of a

contemnor is not a necessary condition for civil contempt, it most certainly should be considered

in the analysis when present. *See Cobell v. Babbitt*, 37 F.Supp.2d 6, 36 (D.D.C. 1999) ("A

contemnor need not intentionally violate a court order in order to be held in civil contempt. The

court cannot, however, be oblivious to these instances of willful dereliction."). In that regard, the

Magistrate completely ignored the evidence that defendants operated the "evaluation" part of a

diploma mill scheme using the AACRAO name. This failed recognition permeates the report

both in the context of defendants' alleged substantial good faith compliance and in the context of

appropriate sanctions.

4

/204727LDR.1

Defendant Prade operates diploma mills and uses various credential services like AUAP to give these false diplomas a seal of approval. As explained by Alan Contreras, a national watchdog on diploma mills, in a recent edition of *Inside Higher Ed*, a higher education trade publication:

> Prade, the owner of AUAP, also owns a series of "faux French degree suppliers that use variants on the name 'Robert de Sorbon.' To add credibility to the degrees issued by those institutions (which Oregon, among other states, declines to recognize), Contreras asserts, "an 'evaluation service' magically appeared that made itself look like it was AACRAO-related." It did this because AACRAO is one of the best known 'names' in the international degree evaluation business.

*See* Exhibit H to AACRAO Reply (Docket No. 21).

The Magistrate's failure to understand the importance of this fact jaundiced his ability to properly view statements made by Prade. For example, the Magistrate found, based only on Prade's self-serving statements, that "Defendants interacted with each customer only briefly" and therefore could not comply with the Injunction's requirement to produce customer addresses. An alternative (indeed proper) inference is that Prade is involved in an unscrupulous business and his self-serving statements should be viewed with suspicion.

3.    **The Report Failed to Consider Evidence that Defendants Were Known to Willfully Infringe Trademarks of Others.**

The Magistrate failed to consider the evidence that Prade was known to have willfully infringed the trademarks of others. Again, this failure to recognize Prade for who he is improperly bolstered Prade's credibility where it should have been more closely scrutinized as it related to matters of this case.

The World Intellectual Property Organization (WIPO) found that Prade had infringed trademarks of the Louis Vuitton company by using the domain name louisvuiton.com (using

/204727LDR.1

only one "t") in bad faith. *See* Exhibit 14 to AACRAO Motion for Order to Show Cause

(Docket No. 18). The parallel to this case is striking. In the Louis Vuitton case, Prade claimed

he had a "right" to use the Louis Vuitton mark. *See Id.* at § 5, "Parties Contentions." Likewise

in this case, Prade claimed an affirmative right to use the AACRAO mark. *See* Exhibit 4,

AACRAO Motion for Order to Show Cause (Docket No. 18).

**4.      The Magistrate Improperly Created a New "Continue to Violate the Injunction"
         Standard For Contempt.**

        As discussed, on October 27, 2006, the Magistrate found that defendants were in

contempt because they had violated the Injunction on three counts: (1) failed to remove

infringing AACRAO marks from their website; (2) failed to provide addresses of customers to

whom an evaluation report had been sent containing a false affiliation with AACRAO; and (3)

failed to provide the names of institutions that received the foregoing reports. At that time, the

Magistrate rejected each of the arguments presented by the defendants, but allowed defendants

"one final opportunity to comply with the Injunction." *See* Preliminary Report at 12 (Docket No.

25).

        Notwithstanding this admonition, the Magistrate did not act for over eight months and

three additional status hearings, each time giving defendants "another chance." *See, e.g*.,

December 15, 2006 Hearing Tr. at 21, attached hereto as Exhibit B ("[T]his is the last

opportunity; that I will not hold any further hearings.").

        In the current report, however, the Magistrate now accepts those arguments previously

rejected. In doing so, the Magistrate created a new standard for contempt: previous

contemptuous conduct is excused so long as the contemnor does not continue to violate an

injunction. The Magistrate's singular focus on the eight months of his "monitor period" shifted

/204727LDR.1

attention away from defendants' contempt.  For example, in the first report, the Magistrate found

that defendants admittedly failed to remove infringing marks from their website in violation of

the Injunction's requirement to remove all marks immediately.  *See* Preliminary Report (Docket

No. 25) at 12.  Indeed, the Magistrate found that "violations have persisted on the Web site well

after entry of the Injunction."  *Id.*  By comparison, in the final report, the Magistrate simply

advises the Court that since the October preliminary report, "Defendants removed all references

to Plaintiff from the AUAP Web site."  *See* Report at 4.  The exclusive focus on conduct during

the Magistrate's "monitor period" is improper.

5.      **The Magistrate's Finding that Defendants "Substantially Complied" With the
        Injunction Is Without Factual or Legal Basis.**

         The Magistrate improperly found that defendants substantially complied with the

Injunction.  The record shows, however, as the Magistrate originally found, that defendants

failed to substantially comply with the Injunction.

        (a)     *Defendants still have not provided the addresses for the students of the
                "Guaranteed Admission Program."*

         The Magistrate found that defendants provided addresses for "38 customers of AUAP's

'Selection + Guaranteed Admissions Program" on November 20, 2006 (seven months after the

Injunction issued) and for another approximately thirty-seven customers of the same program on

January 16, 2007 (about nine months after the Injunction issued).  From those two indisputably

very late productions, the Magistrate concludes that defendants have substantially complied with

the Injunctions requirement to produce addresses.

         To the contrary, such a production (ignoring for the moment that it is substantially late)

was woefully lacking.  Defendants admitted to having the addresses for about eighty students *per*

7

*year.* For the period 2000 through 2006, there would have been about 560 customers of the

"Guaranteed Admission Program." As defendants admitted:

| | |
|---|---|
| Magistrate Judge: | You charge a standard fee? |
| Prade: | We have the – for this program, the guaranteed admission program? |
| Magistrate Judge: | Yes |
| Prade: | Which is about 80 student a year maximum. |
| Magistrate Judge: | Right |
| Prade: | We have the addresses of our student, we don't – |
| Magistrate Judge: | You have the addresses of those students. |
| Prade: | Of course. There's no problem. |

*See* October 2, 2006 Hearing Tr., attached hereto as Exhibit A, at 36-37.

As defendants have failed to provide addresses for about 500 students—roughly 87% of

the addresses defendants admit that they have. There is no way any reasonable person would

consider this substantial compliance.

> (b)    *Defendants have produced no addresses for customers of their credential evaluation service.*

The Magistrate found that defendants could not have provided the addresses for the

credential evaluation service because he accepted defendants' contention that records "were not

kept because Defendants interacted with each customer only briefly." Report at 7.

Such a contention is implausible, particularly with these defendants which have shown a

willingness to misrepresent facts to the Court. Equally, the contention is illogical as the manner,

not the extent, of communication is the relevant issue. Defendants admit that they only advertise

through their website and that they receive at least some communication from customers by e-

mail. *See* Ex. A, October 2, 2006 Hearing Tr. at 23. As the Court is well aware, the receipt of an

e-mail necessarily results in a record of the sender's e-mail address.

Accordingly, defendants must have had an e-mail record for at least some of the

customers of the credential evaluation service. It is simply irrelevant that the transaction

/204727LDR.1

between defendants and the customer was only brief.  In order to believe that defendants have no record of any e-mail address, the Court must believe that defendants erased each e-mail received from the customers.  Such a conclusion, however, raises more serious concerns about spoliation of evidence.  This case commenced on January 25, 2006.  Defendants should have at least produced the e-mail record of addresses from that date through the Injunction in April 2006. Defendants have failed even to do that.  Again, there is no credible basis to find that defendants have substantially complied with the Injunction's requirement to produce addresses of customers of the credential evaluation service.

   (c)    *Defendants did not provide all of the required names of the institutions that received the credential evaluation reports.*

   The Magistrate concluded that "because Defendants generally communicated only with these [evaluation] customers, and not with third-party institutions, Defendants were unable to provide names of any third-party recipients of evaluations."  Report at 7.  The Magistrate further concludes that the names "were not provided to Plaintiff because Defendants never communicated with them directly."  *Id.*

   Foremost, the Magistrate improperly limited the scope of the Injunction to only third-party institutions for which defendants had direct communication.  To the contrary, the Injunction was not so limited; it required defendants to "provide the names of any and all third party recipients of [evaluations]."  *See* Final Consent Judgment and Injunction at 3 (Docket No. 17).

   Contrary to defendants' contention, which the Magistrate accepted, that they could not provide the names because they didn't communicate directly with the institutions, it is undisputed that defendants prominently displayed the names of many undisclosed institutions on

/204727LDR.1

their website.  If defendants are able to ascertain the names of these institutions to promote their

business, then surely they should be able to fully comply with this Court's Injunction.

**6.     The Magistrate's Finding that Defendants Acted in Good Faith is Without Factual or Legal Basis.**

Even if the Court were to conclude that defendants substantially complied with the

Injunction, there is no factual or legal basis to conclude that defendants did so in good faith.

*(a)     New evidence shows that defendants misrepresented to the Court that they had immediately stopped using the AACRAO mark.*

The Magistrate's report relies extensively on representations made by Prade that

defendants complied with the Injunction and undertook all reasonable steps to insure

compliance.  Such reliance is inappropriate given that Prade cannot be trusted to tell the truth.

During the October 2, 2006 hearing, Prade stated several times that he has ceased all use

of the AACRAO marks.  For example:

| | |
|---|---|
| Prade: | They [AACRAO] never say in any of their documents, like for the addresses, they never say you use it [AACRAO's trademarks] before.  I use it when I was a member, and they say you are not allowed to do it because you don't – aren't allowed to do it, and I consented.  But what I am a little upset – |
| Magistrate Judge: | What about today, Mr. Prade? |
| Prade: | Of course not, Your Honor.  No more. |

*See* Ex. A, October 2, 2006 Hearing Tr. at 71.

Later in the same hearing:

| | |
|---|---|
| Prade: | We agreed together was from 2000 to 2005.  I have to tell you when I receive the first motion or the first [cease and desist] letter from [AACRAO's counsel], I immediately stopped putting the word "AACRAO." |
| Magistrate Judge: | All right. All right. |
| Prade: | Because I stopped being a member [of AACRAO] – |
| Magistrate Judge: | Good. Fine. Let – |
| Prade: | -- a member in September, 2005 --. |

*See* Ex. A, October 2, 2006 Hearing Tr. at 74.

/204727LDR.1

The foregoing representations to the Court were manifestly false. Since the last hearing, the undersigned has uncovered a Prade/AUAP credential evaluation dated April 24, 2006 in which defendants continued to use the AACRAO name and continued to suggest an affiliation with AACRAO. *See* April 24, 2006 evaluation, attached hereto as Exhibit D. Critically, this report was issued well after Prade's representation that he ceased use of the mark in September 2005, and eleven days after the Injunction issued on April 13, 2006.

      (b)     *Defendants misrepresented that they only had one computer hard drive used in the AUAP business.*

At the October 2, 2006 hearing, Prade represented to the Court that AUAP had only one computer and that his wife's computer was unrelated to the business.

| | |
|---|---|
| Prade: | My only computer, we have the copy with the name, the first name, but no addresses. Is it a mistake? Perhaps. But it is the way I work. |
| Magistrate Judge: | All right. You have a computer, yes? |
| Prade: | Yes, sir. |
| Magistrate Judge: | All right. And it's – Elizabeth Prade is a relative of yours? |
| Prade: | It's my wife, sire. |
| Magistrate Judge: | Your wife, all right. So your wife has her computer and you have your computer? |
| Prade: | No, she doesn't work. |
| Magistrate Judge: | All right, so you have one – |
| Prade: | We needed a second person. |
| Magistrate Judge: | You have one computer. |
| Prade: | Yes. |
| Magistrate Judge: | Yes. And you have, on that computer, all the files that relate to your activities. This is a business computer? |
| Prade: | Yes. |

*See* Ex. A, October 2, 2006 Hearing Tr. at 66-67.

Evidence presented during the hearings, however, shows that defendants used a second computer in the AUAP business. *See* December 15, 2006 hearing Tr. at 7-10, attached hereto as Exhibit B, and the corresponding exhibit A to AACRAO's Second Statement of Non-

/204727LDR.1

Compliance (Docket No. 30). Inexplicably, the Magistrate gives credence to defendants for providing Prade's wife's computer – a computer that everyone agrees had nothing to do with the AUAP business. The fact presented, which the Magistrate failed to appreciate, was that defendants misrepresented the existence of a second computer used in the AUAP business and failed to produce the second computer when so ordered. The production of the wife's computer is irrelevant to the analysis.

    *(c)*     *While defendants ultimately deleted AACRAO references from their website, their delay in doing so could hardly be considered good faith.*

The Magistrate makes much of the fact that defendants complied with Injunction's requirement to remove all references to AACRAO from their website, but utterly avoids any analysis of the road AACRAO went down to get that compliance or how such delay could be considered in good faith.

First, compliance with the requirement to remove AACRAO references from the website could have been very easily met in a much more rapid fashion. Defendants need only to have instructed their web master to search for and delete references to AACRAO. As the Magistrate recognized, Prade himself admitted that his efforts to comply with this provision of the Injunction was "not 100 percent." Where compliance is easily achieved, failure to completely comply should not be viewed as good faith.

Second, defendants took over five months from the issuance of the Injunction to remove all references to AACRAO from their website. *See* Exhibits 7, 11 to AACRAO's motion (Docket No. 18) and Exhibits A-E to AACRAO's Reply (Docket No. 21). The Magistrate fails to even mention this delay, much less explain how this delay does not eviscerate the notion of good faith on the part of the defendants.

/204727LDR.1

(d)    *Defendants attempted to pass off a false list of institutions in an attempt to deceive AACRAO and the Court.*

In response to the Injunction's requirement to name all institutions receiving AUAP credential evaluations, defendants presented a list of institutions taken from another entity's website and attempted to pass off this list as AUAP's. In the preliminary report, the Magistrate suggested that there were other "plausible" explanations for defendants presenting a verbatim copy of another entity's list of customers. *See* October 27, 2006 Preliminary Report at 10, n.5 (Docket No. 25). Defendants, however, never provided a "plausible" explanation for providing this false list, and it was improper for the Magistrate to ignore this fact in analyzing defendants' lack of good faith.

The Court need only compare the list provided by defendants as allegedly meeting the Injunction's requirement with the list found by the undersigned on the Consortium of Mongolian Universities and Colleges (CMUC) website to see that the former is a verbatim copy of the CMUC list—an entity unrelated to AUAP. *See* Exhibit 2 to AACRAO's Motion (Docket No. 18). This fact alone should give the Court substantial pause before concluding that defendants acted in good faith. The Magistrate does not even address this deception in the report.

(e)    *Of the names and addresses provided, it still took defendants over nine months following the issuance of the Injunction to provide that information.*

The Magistrate argues that defendants complied with the Injunction by providing the seventy-five client names and addresses and the identities of one hundred colleges. Report at 4. The Magistrate does not address, however, the nine months that elapsed after the Injunction issued before those last names and addresses were provided. There is no basis by which a nine-month delay can be viewed as good faith, and the Magistrate's report certainly does not offer any.

/204727LDR.1

Though not expressly stated, the underlying premise appears to be that defendants finally on November 22, 2006 obtained counsel to appear before this Court, and that defendants ought to be given an opportunity to comply with the Injunction under the advice of counsel. *See* Ex. B., December 15, 2006 Hearing Tr. at 21 (Magistrate noting "I think [defendants' counsel now has a role to play in convincing his client that this is the last opportunity."). But that argument still does not establish any notion of good faith on the part of the defendants. First, even after defendants obtained counsel of record, it still took them about two more months to provide the last of the names and addresses provided. Second, defendants were already represented by counsel when the Injunction issued and had the opportunity for advice of counsel. At the time of the Injunction, defendants were represented by counsel Thomas Wood. *See, e.g.*, Exhibit 9 to AACRAO's motion (Docket No. 18).

**7.    AACRAO Never Conceded That Defendants Don't Possess the Missing Names and Addresses.**

Apparently to bolster the argument that the Court has done all that it can do, the Magistrate states that "Plaintiff no longer strongly contends that Defendants possess the missing names and addresses." *See* Report at 7. To the contrary, in no way did AACRAO make such a concession nor did it ever waiver in its contention that defendants have failed to produce the required names and addresses. Indeed, the undersigned explained, as has been done above, that the defendants are untruthful and that prospective sanctions will be required to assure future compliance with the Injunction. For example:

| | |
|---|---|
| Mr. Murphy: | No. But he [Prade] is not in full compliance with respect to turning over documents. |
| Magistrate Judge: | Well, he alleges that he does not have the documents that you are requesting. If he is telling the truth, then he can't produce documents he doesn't have. If he is being less than truthful, obviously then he's not in compliance. But you don't have any |

14

/204727LDR.1

|                    | hard information that there exists or – there exists documents that he is withholding from you – |
| Mr. Murphy:        | No, I – |
| Magistrate Judge:  | -- that show up in any fashion? |
| Mr. Murphy:        | I don't have that, Your Honor, short of the requested inspection of his offices. . . . So he [Prade] is an untruthful person.  We know that he was untruthful. |

*See* June 14, 2007 Hearing Tr. at 5-7, attached hereto as Exhibit C.

**8.      The Court Must Enter Some Sanction Against These Defendants.**

The Magistrate has recommended that all manner of sanctions be denied, despite his original finding that defendants were in contempt of the Injunction and his ultimate finding of defendants' "indignant heel-dragging."  Report at 10.  In view of the foregoing, sanctions are the only measure that will ensure defendants' future compliance with the Injunction.  At a minimum, defendants should be compelled to pay for AACRAO's attorney's fees for the period when they delayed complying with the Injunction (to the extent they did).

As to prospective sanctions, the Magistrate has missed that confirming defendants' compliance with the Injunction will be extremely difficult, particularly with defendants willing to misrepresent the truth.  As discussed above, AACRAO just recently learned that defendants issued a credential evaluation claiming an association with AACRAO after the Injunction issued. *See* Ex. D.  It was only by chance that AACRAO came across this noncompliant evaluation because the recipient of the evaluation happened to post it on the internet.  But because of the nature of AUAP's business, in which there are only brief e-mail transmittals to individuals, the Court should not underestimate the ability of defendants to hide their contempt of this Court's authority and the rights of AACRAO.  Accordingly, AACRAO proposed a prospective sanction by way of a fine for each discovered violation.  It would be grossly unfair to AACRAO on the foregoing record to simply conclude, as the Magistrate has done, that AACRAO must bring

/204727LDR.1

another motion for contempt. With all due respect, it shouldn't take a trademark owner nine months or more to receive the Court-ordered respect of its intellectual property.

At a minimum, defendants will never take this Injunction seriously if they are not at least required to pay for AACRAO's attorney's fees incurred during the period when defendants delayed compliance. There is simply no reason for AACRAO to have incurred fees associated with compelling removal of infringing marks from defendants' website when Prade admits he gave less than 100 percent effort to comply. There is no reason for AACRAO to have incurred fees associated with getting names and address over a nine month period. The undersigned is at a loss to understand why the innocent trademark holder must bear the cost caused by a known infringer's "indignant heel-dragging."

Date: July 31, 2007

                                   Respectfully submitted,

                                   s/Christopher P. Murphy
                                   Christopher P. Murphy
                                   D.C. Bar # 447130
                                   Arent Fox LLP
                                   1050 Connecticut Avenue, NW
                                   Washington, DC 20036
                                   Telephone: 202-857-6000
                                   Facsimile: 202-857-6395

                          **ATTORNEYS FOR PLAINTIFF AACRAO**

/204727LDR.1

## CERTIFICATE OF SERVICE

I, Sarah L. Clarke, hereby certify that on this 31st day of July, 2007, I electronically

submitted the attached **PLAINTIFF THE AMERICAN ASSOCIATION OF COLLEGIATE**

**REGISTRARS AND ADMISSIONS OFFICERS' OBJECTIONS TO MAGISTRATE'S**

**REPORT AND RECOMMENDATION** to the Clerk's Office by using the CM/ECF System

and a Notice of Electronic Filing was transmitted to the following CM/ECF registrant:


S. Ricardo Narvaiz
1300 Spring Street, Suite 500
Silver Spring, Maryland 20910
rnarvaiz@drintl.com



s/ Sarah L. Clarke_____

17

/204727LDR.1